Argued 1 July, decided 27 July, 1903.

## WAGNER *v.* DORRIS.

[73 Pac. 318.]

MINES — EVIDENCE OF LOCATION OF CLAIM.

1. The evidence sustains the finding of the trial court that assessment work done by defendants on a previous claim embracing the land contained in plaintiff's location was not within the limits of such prior claim, and that the same was therefore subject to relocation.

MINES — EVIDENCE OF VALUE OF ASSESSMENT WORK.

2. The evidence sustains the finding of the trial court that the assessment work in dispute was not of greater value than fifty dollars.

From Lane: JAMES W. HAMILTON, Judge.

This is a suit by Charles Wagner against Geo. A. Dorris and others to quiet title to a mining claim known as the "Democrat," situated in the Blue River Mining District, in Lane County. He avers that he located the claim January 1, 1901, and that the defendants claim some right, title, or interest therein adverse to his, and prays that they be required to set up the nature thereof, that it may be adjudicated. Defendants answer that on July 30, 1898, Louis Wagner located a claim known as the "Wagner Mining Claim," commencing at the northwest end of the Republican Claim, at Franks Creek, and about 100 feet southwest of a waterfall, running 1,500 feet in a northwesterly direc-

tion to the southeast end of the Uncle Sam Mining Claim; that said Wagner claim was located over and upon a part of what was formerly known as the "Defenca Claim," except a strip of about 40 feet in width off the south end thereof; that one Frank Mengoz claimed some interest in the 40 feet not covered by the Wagner; that on March 23, 1900, Louis Wagner, Frank Mengoz, and defendants Pepiot and Dorris mutually agreed that the southern line of the Wagner be moved south to conform to the south end line of the Defenca; that thereupon, and for a valuable consideration, Wagner deeded to Pepiot and Dorris an undivided one half interest in the Wagner claim, and to the defendant Fisher an undivided eighth interest therein; that by virtue of such deeds Louis Wagner and the defendants Fisher, Pepiot, and Dorris became joint owners thereof; that, during the year 1900, Fisher, Pepiot, and Dorris performed assessment work on said claim, of the reasonable value of $100; that Wagner failed to perform any work thereon; and that by reason thereof defendants Fisher, Pepiot, and Dorris are now the owners of said Wagner claim, and were such owners when plaintiff pretended to locate the Democrat. These allegations are denied by the reply, and thus are presented the issues for trial.

The circuit court made findings of fact that plaintiff duly located the Democrat Mining Claim; that said claim conflicts with and substantially covers the same ground as the Wagner; that said defendants did not, nor did either of them, perform work or labor on the Wagner for the year 1900, or place improvements thereon during said year, of greater value or reasonable worth than $50; that by reason thereof the Wagner claim became forfeited and subject to plaintiff's location. A decree was thereupon rendered in favor of plaintiff, from which defendants appeal.

AFFIRMED.

For appellants there was a brief over the names of *Geo. A. Dorris* and *Lawrence T. Harris*, with an oral argument by *Mr. Harris.*

For respondent there was a brief over the name of *Pipes & Tifft*, with an oral argument by *Mr. Martin L. Pipes.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

The real question involved is whether defendants performed the proper or a sufficient amount of assessment work upon the Wagner Mining Claim for the year 1900 to prevent a forfeiture; but, incidentally, there is a dispute relative to the true southeasterly boundary line of the Wagner claim, the defendants insisting that it is south of the mouth of a tunnel formerly excavated in the vicinity, while the plaintiff asserts that it lies to the north thereof. Whatever assessment work was done by defendants was within these disputed boundaries, so that, unless they are right in their contention, the work done was not within the limits of the Wagner claim. But, if within the limits thereof, the question remains whether there was sufficient work done and improvements made for the year 1900 to conform to the requirements of the law authorizing such location.

To be understood, it should be premised that the claim in dispute lies at an angle with a true north and south line of from ten to twenty degrees, and is described as running in a northwesterly and southeasterly direction, and the end lines are referred to, interchangeably, as the north (or northerly) and south (or southerly), or the northwesterly and southeasterly, end lines.

Frank Mengoz and R. Pepiot located the Defenca, July 1, 1888, and the tunnel spoken of was probably constructed on this claim. Louis Wagner, a brother of the plaintiff, located the Wagner on July 30, 1898. These two claims

cover much the same ground, except the Wagner does not extend so far north as the Defenca. In the month of March prior to the location of the Wagner, Frank Mengoz located the Republican Mining Claim, which conforms in its northwesterly boundary line with the southeasterly boundary line of the Wagner, the lines being practically identical as separating one claim from the other. Some litigation arose involving a dispute as to the relative boundaries of the Wagner and Defenca, and a settlement was effected March 23, 1900, between the parties litigant, wherein Louis Wagner deeded to defendants Joe Pepiot and George A. Dorris an undivided half interest in the Wagner, and thereafter Fisher acquired some interest therein. At the same time, Frank Mengoz quitclaimed to Louis Wagner all his interest in the Defenca. Subsequently, Mengoz conveyed an undivided one half interest in the Republican to Louis Wagner. On the 1st of January, 1901, the plaintiff, Charles Wagner, located the Democrat Mining Claim, embracing substantially the same ground as the Wagner, upon the assumption that it was unappropriated public land of the general government, and subject to location. These facts are practically undisputed.

1. Frank Mengoz testifies that in locating the Republican he put the north center end stake upon the hill, 60 feet northwest of the mouth of the tunnel, and 360 feet from the discovery point; that it consisted of a piece of timber and that he nailed a board on an old snag there, and "wrote what it was"; that the mouth of the tunnel was wholly within his claim; that he knows the location of the southeast center end stake of the Wagner, and that it is right at the northwest center end stake of the Republican, his board on one side and the Wagner notice on the other; that he saw it.about a week after it was put there, and has seen it many times since; and that the work done

by Pepiot and Dorris in 1900 was on the Republican claim. Louis Wagner testifies that he put a stake at the dump near the mouth of the tunnel about two weeks after he located the Wagner; that he commenced work in the tunnel, and put the stake there to divide his quartz rock from that of Mengoz (it should be understood that the tunnel is about 240 feet in length, and extends in any event some distance into the Wagner claim); that he indicated, by writing on the stake, that the southeast end stake of his claim (the Wagner) was about 60 feet above; that a copy of the notice of location was contained in a can at the stake; that he located the Wagner, and put the south center end stake by the side of the north center end stake of the Republican; that he nailed some boards on the opposite side of the snag to the north, wired a can to the stake, and left the location notice in it; that he made no claim to the mouth of the tunnel; and that he never afterward changed the south center end stake of the Wagner. Such is the positive testimony of the two men who located these adjoining claims. They are strongly corroborated as to the center end stake dividing the Wagner from the Republican by James Hennessy, George Lea, James Neil, Elmer Neil, and Frank Pepiot. Beyond this is the testimony of Charles Wagner that in locating the Democrat he placed his south center end stake beside the end stake of the Wagner and Republican, which he saw and recognized as such, and that the southwest (southeast) end line of the Democrat was the same as the northwest end line of the Republican. The defendants, however, insist that the stake at the dump, which Louis Wagner testifies he put there to indicate a separation of his quartz rock from that of Mengoz, is the true center end stake between the Wagner and the Republican claims, and that the work done in 1900 was to the north thereof. Mr. Dorris testifies that he; with others, went over the ground in February or March, 1900, for the

purpose of observing the conditions relative to the location of the Wagner claim ; that they found a stake at the dump, and by it the can, containing a copy of the location notice of the Wagner ; that on the stake was printed, whether on paper or board the witness had forgotten, this language : " Notice.   Southwest (southeast) end of the Wagner Mining Claim, running 1,500 feet in a northwest direction to the southeast end of the Uncle Sam.  July 30, 1898.  L. Wagner, locator.   Notice in can"; that he observed nothing to indicate that the true stake was situated 60 feet above, as testified to by Louis Wagner and Frank Mengoz ; that he took an exact copy of what was written, and was able to testify positively concerning it.   In this testimony he was corroborated in the main by some of the men who were with him.   Some of these men saw the stake on the hill, but the consensus of their evidence is that it was there simply to mark the center line of the ledge upon which the claim was located, and was not intended to indicate in any manner the southeasterly boundary of the claim. James Kennerly, a witness for the defendants, testifies that the tunnel is all on the old Defenca claim ; that the stake in the dump was marked, " but didn't say the south end stake ; it was the center end stake of the Wagner"; that he was present on the morning of the 23d, when the settlement of the litigation was effected ; that it was understood that the line of the Wagner should be set back to the old Defenca line, which was then considered to be some 80 or 90 feet from the mouth of the tunnel ; that the Wagner south center end stake was still farther down the hill, below the dump, but it lacked a few feet of going down to the old Defenca line ; that there were only five or six feet between the lines of the Defenca and the Wagner ; that Mengoz did not want to give up the cabin, but that it was agreed that he should have the use of it the same as if he

owned it, and that Pepiot and Dorris were the owners of the land.

This cursory allusion to the testimony shows some of its more marked features, and indicates wherein the divergency lies as between the parties. The details bear reference to the location of Franks Creek and one or more waterfalls therein, the direction of the disputed center end post therefrom, the same being situated, as described in the notice of location, about 100 feet southwest of the first waterfall in said creek, and to the location of cabins and other improvements in the vicinity. The stake in the dump appears to be in a southwesterly direction from a waterfall, and the witnesses estimate it as from 40 to 100 feet therefrom, but it is concededly not upon any ledge. The stake on the hill is in a northeasterly direction from this particular fall, and leads to some confusion; but the situation of the dump stake with reference to the particular fall described by the witnesses is not a circumstance of conclusive effect. The stream has been changing its course somewhat, and there is more than one waterfall in proximity to the *locus in quo;* nor is the testimony as to the cabins and other improvements of much avail in determining the true line. The features in the testimony of controlling importance, to our minds, are the location of the Republican by Mengoz, the location of the Wagner by Louis Wagner, and the identification by them, and other witnesses of repute, of the stake on the hill above the tunnel as being the northwest center end stake of the Republican and the southeast center end stake of the Wagner. The testimony of defendants, it must be conceded, tends strongly to the disparagement of this view, but its effect is not sufficient to overcome it. Mengoz was instrumental in the location of the old Defenca, and knew that the mouth of the tunnel was located thereon, and, in making a relocation, the Defenca in all probability being

at the time subject to such action, it was very natural that he should extend the lines of the Republican farther to the north, so as to include a portion of the tunnel; and then Louis Wagner, with whom Mengoz had assuredly conferred in reference to the claim, shortly afterward located the Wagner, and, corroborated as they are by the testimony of Charles Wagner as to the identity of the true end stake dividing the Wagner from the Republican, and by the other witnesses named above, we are induced to believe that the stake on the hill, and not the one in the dump at the mouth of the tunnel, designates the true southeasterly boundary of the Wagner. The settlement alluded to as having been entered into between the parties litigant March 23, 1900, relative to setting the southeasterly line of the Wagner back to conform to the corresponding end line of the Defenca, could not affect the plaintiff herein, as he was not a party thereto. It is apparent, therefore, that the work done by Fisher, Pepoit, and Dorris was not on the Wagner claim, and such claim was therefore subject to relocation.

2. But if there be any doubt about the correctness of this conclusion, the case is disposed of by the fact that the assessment work which the defendants performed was not of the reasonable value of $100. The trial court found it to be of no greater worth than $50, and we think the deduction is a fair one from the testimony. Rucker and Mitchell did the work, and one of them makes an affidavit that it was worth at least $100. Both were placed on the witness stand, and testified that they believed, or were of the impression, that they worked fifteen or sixteen days each, but kept no memorandum of the time. On cross-examination, they could not give the day when they commenced or when they quit work, and were vacillating, indefinite, and uncertain as to the number of days engaged in the service, and would not say that they had even worked fifteen days

each.   The testimony of Louis Wagner is positive on the subject that they worked but nine days each, and this had partial corroboration by Mengoz and other witnesses, which could not by any reasonable wage scale bring the value of the work up to $100.   Fisher testifies that he paid these men $108.50, and we have no reason to doubt what he says; but he could not say what amount of work they did, and he was assuredly imposed upon by them.   The requisite amount of work was evidently not performed.

In any view of the case, therefore, the Wagner was subject to relocation on January 1, 1901, and, there being no dispute but that the plaintiff's location of the Democrat was otherwise regular, the decree of the trial court should be affirmed, and it is so ordered.    AFFIRMED.

Decided 27 July, rehearing denied 5 October, 1903.