527 P.2d 112

**GREAT EASTERN MINES, INC., a New Mexico corporation, and Colorado Mines and Metals Company, a New Mexico corporation, Plaintiffs-Appellees,**

v.

**METALS CORPORATION OF AMERICA, a New Mexico corporation, and Chester C. Smith, Joe H. Rainey, George V. Humphreys and A. W. Jones, Defendants-Appellants.**

**No. 9899.**

Supreme Court of New Mexico.

Oct. 4, 1974.

Frederick A. Smith, Truth or Consequences, for defendants-appellants.

Adams & Zeikus, O. R. Adams, Jr., Albuquerque, for plaintiffs-appellees.

## OPINION.

McMANUS, Chief Justice.

Plaintiff brought suit against defendants claiming valid and subsisting ownership of certain unpatented mining claims described as the Wall Street Claims Numbers I through VII, inclusive. Plaintiffs also

sought damages for alleged slander of title. All damage claims were later withdrawn and the issue was submitted to the court and jury on the question of ownership only. All of said claims were in Sierra County, New Mexico. As the trial progressed all parties stipulated that the only claims in dispute were the Wall Street Claims 2, 3 and 5. The jury returned a verdict for the plaintiffs and the trial court entered judgment thereon.

The evidence disclosed that in 1951 plaintiffs filed notice of location on the claims in question. The defendants located their claims in January 1967, resulting in the conflict before us. Plaintiffs' work on the claims for fiscal year 1966 (September 1, 1965 to August 31, 1966) consisted of mapping and survey and the taking of ore samples, including bulk and channel samples. Bulldozer work to obtain samples and expose older material was also accomplished and jackhammer, drilling and blasting samples were forwarded to a mill in Colorado for evaluation by a geologist. Evidence as to the value of the work showed it was in excess of $1,000. Plaintiffs failed to file a proof of labor for that year.

The defendants first contend that:

"In taking of ore samples by a geologist for testing, mapping or survey work does not constitute valid assessment work when the requirements of 30 U.S.C.A Sec. 28–1 and 2 have not been met."

Those sections of 30 U.S.C.A. provide:

§ 28–1. "The term 'labor', as used in the third sentence of section 28 of this title, shall include, without being limited to, geological, geochemical and geophysical surveys conducted by qualified experts and verified by a detailed report filed in the county office in which the claim is located which sets forth fully (a) the location of the work performed in relation to the point of discovery and boundaries of the claim, (b) the nature, extent, and cost thereof, (c) the basic findings therefrom, and (d) the name, address, and professional background of the person or persons conducting the work. Such surveys, however, may not be applied as labor for more than two consecutive years or for more than a total of five years on any one mining claim, and each such survey shall be nonrepetitive of any previous survey on the same claim."

§ 28–2. "As used in section 28–1 of this title,

"(a) The term 'geological surveys' means surveys on the ground for mineral deposits by the proper application of the principles and techniques of the science of geology as they relate to the search for and discovery of mineral deposits;

"* * *

"(c) The term 'geophysical surveys' means surveys on the ground for mineral deposits through the employment of generally recognized equipment and methods for measuring physical differences between rock types or discontinuities in geological formations;

"(d) The term 'qualified expert' means an individual qualified by education or experience to conduct geological, geochemical or geophysical surveys, as the case may be."

Was the work done on the claims in question for the year 1966 valid assessment work? The record discloses that discovery of minerals had been made prior to 1966, thus the work done during that year was not for exploratory purposes. The sampling made during this period was quite extensive, including extraction of bulk and channel samples, accomplished by bulldozing, blasting and drilling, with well over one thousand pounds of samples being extracted at a cost to appellees of over $1,000. Evidence of such sampling would clearly be visible on the ground. The testimony shows that the work was done for the purpose of determining the milling characteristics of the ore located on the subject claims to facilitate mineral development of the area.

Appellants rely on Pinkerton v. Moore, 66 N.M. 11, 340 P.2d 844 (1959), which

held that reconnaissance and counter reconnaissance do not constitute valid assessment work, and Bishop v. Baisley, 28 Or. 119, 41 P. 936 (1895), which held that taking samples from the walls of the shaft or outcroppings in small quantities and making tests could not be credited as annual labor. These two cases are clearly distinguishable from the facts of the instant case.

In Pinkerton, supra, the surveys were not of a character that would enure to the benefit of the claim. Bishop, supra, is also distinguishable in that sampling from the walls of the shaft, et cetera, was done to determine if there was a "pay chute," with that court differentiating between survey work done for the purpose of discovering a "pay chute" and that done for the purpose of developing it, as in this case. Here it is evident that the work performed benefitted a claim and was not done to ascertain whether there was a "pay chute" in the mine, but rather to determine the milling characteristics of the ore already known to exist.

█ The general rule in regard to the character of ground work is that the work must be of such a character as directly tends to develop and protect the claim and to facilitate the extraction of minerals. Eveleigh v. Darneille, 276 Cal.App.2d 638, 81 Cal.Rptr. 301 (1969).

█ Guidelines for the determination we must make regarding the work done by plaintiffs are set out in Schlegel v. Hough, 182 Or. 441, 186 P.2d 516, reh. denied, 182 Or. 449, 188 P.2d 158 (1947), as follows:

" * * * The question to be considered is whether or not the work was done in good faith 'for the purpose of working, prospecting or developing the mining ground embraced in the location, or for the purpose of facilitating the extraction or removal of the ore therefrom.' [Citations omitted.]"

2 American Law of Mining § 7.6, at 108 (The Rocky Mountain Mineral Law Foundation, ed. 1973), addresses itself to the "good faith" requirement mentioned by the court in Schlegel, supra. In addition to the good faith requirement, it is well settled that the work must tend to develop the claim and facilitate the extraction of ore therefrom. However, if the work is performed in good faith, the court will not substitute its own judgment for that of the miner. The work need not be performed openly and notoriously.

Dale Carlson, a geologist, and a witness at the trial on the significance of the work done during the period in question, testified as follows:

"Q. Mr. Carlson, then in regard to this work that was done, can you tell us whether or not there was work done in all of the seven Wall Street claims in the period from September 1st, 1965 through the end of the year?

"A. From the samples there was work done. If you will give me this exhibit over here, I can tell you which. There was work done on Wall Street 1, Wall Street 2, Wall Street 3, Wall Street 4 and Wall Street 5.

"Q. Would that work have been beneficial to all of the claims?

"A. There are two major veins on the property.

"Q. Let's back up, I just want first an answer to the question, yes or no?

"A. Yes. I believe it was.

"Q. Will you explain that, please?

"A. Well, there are two veins on the property that we work on, and all the claims are located on these two veins. And development of any part of the vein and knowledge gained on any part of the vein, of course, benefits development of the entire claims."

This would indicate that the work was done after discovery of the mineral in place and for the purpose of development of the claim in question.

■ The work done by plaintiffs was not accomplished for the discovery of mineral deposits nor for the purpose of measuring physical differences between rock types or discontinuities in geological formation. It was done to determine the milling characteristics of the mineral deposit already known to exist. Because of these facts, these samples were outside the definitions contained in § 28–2, supra, and outside the labor requirements of § 28–1, supra. However, this was labor for the purpose of developing rather than discovering, and complied with assessment work requirements on mining claims regardless of §§ 28–1 and 28–2, supra. See and compare Bishop v. Baisley, supra; Schlegel v. Hough, supra; Eveleigh v. Darnielle, supra; Simmons v. Muir, 75 Wyo. 44, 291 P.2d 810 (1955); Sampson v. Page, 129 Cal.App.2d 356, 276 P.2d 871 (1954).

Appellants' second point, claiming error on the part of the trial court for not instructing the jury that §§ 28–1 and 28–2, supra, had to be complied with, is found to be without merit for the above stated reasons.

Affirmed. It is so ordered.

OMAN and STEPHENSON, JJ., concur.